# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

STEPHEN T. SOUDERS,                              Case No. 1:15-cv-429
       Plaintiff,                                       Beckwith, J.
                                                 Litkovitz, M.J.


       vs.


MOUNT ST. JOSEPH UNIVERSITY,             **REPORT AND**
       Defendant.                                **RECOMMENDATION**


Plaintiff Stephen T. Souders, proceeding pro se, brings this action against defendant Mount St. Joseph University (the University). This matter is before the Court on: (1) defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 8), plaintiff's response in opposition to the motion (Doc. 13), and defendant's reply in support of the motion (Doc. 14); and (2) plaintiff's motion for default judgment (Doc. 10) and defendant's response in opposition to the motion (Doc. 12).

## I. Allegations of the complaint

Plaintiff filed the pro se complaint in this matter on July 2, 2015. (Doc. 3). Plaintiff brings claims alleging violations of his civil rights by defendant while acting under color of state law, violations of the Constitution and laws of the United States, violations of specified federal statutes, and violations of his rights under state law. (Doc. 3 at 3).

The complaint alleges the following facts in support of plaintiff's claims: Plaintiff was hired by the University as an employee at will and was employed by the University as a police officer until his termination on June 29, 2014. (*Id*. at 4, 10). In approximately November or December 2013, one or more individuals gained entry into a locked college dormitory room and

placed a "stink bomb" in the room.  (*Id*. at 6).  The victims reported the incident to the police immediately.  (*Id*.).  According to plaintiff, the offense constituted a burglary under Ohio law in that the individual(s) who entered the room trespassed in an occupied structure where other individuals were likely to be present with the purpose to commit criminal mischief.  (*Id*., citing Ohio Rev. Code §§ 2911.12, 2909.07).  (*Id*.).  Plaintiff listed burglary as the charge on the incident report.  (*Id*. at 8).

Plaintiff subsequently received an email from University Police Sergeant Timothy Thieman questioning his handling of the burglary report.  (*Id*.).  Plaintiff was advised that the report had been rewritten and the charge reduced to a lesser offense.  (*Id*.).  Plaintiff responded to Thiemann and copied University Chief of Police Colonel Timothy Carney on the response.  (*Id*.).  After plaintiff sent an email to Carney contesting the alteration of the report, Carney brought plaintiff in for a meeting at which Thieman was also present.  (*Id*.).  Plaintiff secretly recorded the meeting.  (*Id*. at 7, 8).  Carney agreed at the meeting that burglary was the proper charge or was "likely" the proper charge and that a burglary charge must be reported under the Jeanne Clery Act, 20 U.S.C. § 1092(f).  (*Id*. at 7, 8).  Plaintiff played the recording of the meeting for Vice-President of Student Affairs Doug Frizzell and Human Resources Director Ashley Terrell-Litton, who verified that Carney admitted at the meeting that the proper charge was burglary.  (*Id*. at 8).  Although the University was required to report the incident as a burglary under the Clery Act, 20 U.S.C. § 1092(f), Carney omitted the incident from the 2014 Crime Statistics published in the 2014 Campus Safety and Security Report (CSSR).  (*Id*. at 7, 8, citing Exh. D).

After the meeting with Carney and Thieman, plaintiff notified Human Resources Director Litton that Carney was violating the Clery Act with respect to the reporting of offenses.  (*Id*. at 9).  Prior to Christmas of December 2013, plaintiff presented concerns regarding the actions of

Carney and Thieman to the Human Resources Department on behalf of his fellow officers. (*Id*. at 4). The concerns presented were: (1) Carney was allegedly altering criminal offense reports by changing offenses to lesser offenses, and specifically changing a burglary to a criminal trespass/A felony in an incident involving plaintiff; (2) felony drug offenses were being sent to the Dean of Students (Dean's Court) for non-judicial punishment; (3) Carney showed a lack of respect in talking to and dealing with officers; (4) there were morale issues within the department; (5) Carney was unable to create and distribute a Policy and Procedure Manual (PPM) for the department in violation of the Clery Act, 20 U.S.C. § 1092(f); (6) Carney had been unable to properly perform the functions of Chief of Police when he held that position with the City of Groveport, Ohio from 2002-03, during which time Carney received a rating of 1.43 out of 4 "on his overall ability to be a police chief," including a ranking of "0" for cooperation, and was asked to resign or face termination (*Id*., Exh. E); and (7) Thieman disbursed protected student health information to student dispatchers in violation of the Family Educational Rights and Privacy Act (FERPA, 20 U.S.C. § 1232), for the purpose of having the dispatchers compare the handwriting on students' FERPA protected health documents and determine if the dispatchers could arbitrarily recognize the writing of students on their protected records. (Doc. 3 at 5).

Soon after plaintiff notified Litton of the alleged Clery Act violation, Litton met with all Police Department officers and with plaintiff last. (*Id*. at 9). Frizzell, who was then Dean of Students, was also present at the meeting between plaintiff and Litton. Litton and Frizzell advised plaintiff that they believed the stink bomb offense was properly categorized as criminal trespass, not burglary.

After that time, Carney began to make the work environment toward plaintiff and other officers who spoke out against him very difficult. (*Id*. at 9). Carney became verbally abusive and began to thoroughly investigate plaintiff to find reasons to terminate him. (*Id*.). He improperly asked students if they had engaged in sexual relations with plaintiff. (*Id*.). He investigated plaintiff's paper usage, and after plaintiff informed Carney that he used a significant amount of paper in the training of new officers, Carney advised plaintiff he would no longer be training new officers. (*Id*.). He observed plaintiff on the campus cameras and noted the times and logs of plaintiff's activities. (*Id*.). He called plaintiff into the office to speak about arbitrary uniform infractions. (*Id*.). He berated plaintiff using explicit language and embarrassed him in front of a group of high school performers in the college auditorium about a door that was locked that Carney wanted unlocked. (*Id*.).

Plaintiff complained to Litton and Frizzell about the alleged harassment and the treatment of other officers, but they accused him of harassing Carney and advised him to resign if he was not happy. (*Id*. at 10). Plaintiff then obtained records about Carney's employment as Chief of Police with the City of Groveport. (*Id*.; Exh. E). Plaintiff presented information to the Human Resources Department indicating that Carney was forced to resign from the department for the same behavior he was exhibiting toward plaintiff and other officers at the University; the University had allegedly lost good officers in the preceding months due to Carney's behavior; and the records showed that the Chief had a history of this behavior. (*Id*. at 10). At his next working shift, and less than a week after presenting this information to the University, plaintiff was terminated. (*Id*.). Carney informed plaintiff that he "had lied on [his] daily activity log about times." (*Id*.). Plaintiff was singled out for this. (*Id*.). There is no policy or procedure in place for terminating an officer for this reason. (*Id*.). Further, plaintiff was "tremendously sick

4

on this day" and spent over 30 minutes in the restroom.  (*Id*.).  Upon his termination, Carney banned plaintiff from returning to college property and sent out a memorandum that he was to be notified if plaintiff was seen on campus again.  (*Id*. at 11).

Plaintiff alleges that although he was initially hired as an employee at will, Carney and Frizzell advised the campus police officers on numerous occasions that "as long as [they] work[ed] 16 hours a month volunteer and graduation, the College [would] hold [their] Peace Officer Commissions."  (*Id*. at 10).  Plaintiff relied on these statements to his detriment by volunteering 16 hours a month and working graduation details as agreed upon and by purchasing approximately $4,000 worth of police equipment.  (*Id*. at 11).

Based on these allegations, plaintiff brings the following claims for relief: (1) violation of whistleblower laws and internal whistleblower policy[1]; (2) breach of contract; (3) creation of a hostile work environment by acts which include imposing discipline on plaintiff, subjecting him to hostile interrogation, giving him a poor performance evaluation, relieving him of duties, "revoking [his] access," damaging his reputation and future employment opportunities, restraining plaintiff and other employees from engaging in protected activity, and harassing plaintiff; (4) violation of the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act; (5) violation of the Higher Education Opportunity Act (HEA); (6) negligent hiring based on the University's failure to conduct a good faith investigation prior to hiring Carney for the campus police chief position and hiring Carney when it knew or should have known he was unfit for the Chief of Police position; (7) negligent retention based on the

---

[1] Plaintiff alleges that he engaged in protected activities which include: raising compliance issues with management and with others who might have been able to commence enforcement proceedings, collecting evidence of violations, communicating with appropriate enforcement authorities to report violations, refusing to engage in unlawful conduct, and participating in enforcement proceedings by making a complaint, initiating proceedings, or being identified as a witness.  (*Id*. at 14).

University's retention of Carney for the Chief of Police position after the University became aware of "Carney's conduct"; and (8) libel and slander  (*Id.* at 11-15).

## II.  Plaintiff's motion for default judgment

After defendant filed its motion to dismiss the complaint, plaintiff filed a motion for default judgment.  (Doc. 10).  Plaintiff notes that the complaint was served on defendant on July 21, 2015; defendant filed a motion for extension of time to file an answer or other responsive pleading with an attached proposed order on July 30, 2015[2]; and the Court granted defendant's motion on August 3, 2015.  Plaintiff nonetheless moves the Court to grant default judgment in his favor on the grounds defendant's motion for extension of time and proposed order granting the motion do not comply with the Local Rules of this Court in two respects.  First, plaintiff alleges that defendant's counsel did not consult with plaintiff prior to filing the motion for an extension of time as required under S.D. Ohio Civ. R. 7.3(a).  Second, plaintiff alleges that the signature line on the proposed order does not read "United States District Judge" or "United States Magistrate Judge" as required under S.D. Ohio Civ. R. 7.4 but instead reads only "Judge." (Doc. 10-1 at 2-3).  Plaintiff argues that in light of these errors, the extension of time the Court granted to defendant on August 3, 2015, to answer or otherwise respond to the complaint is invalid.  Plaintiff alleges that defendant was required to respond to the complaint by the original deadline of 21 days from July 21, 2015, the date of service of the complaint, and its failure to do so entitles plaintiff to a default judgment.

A plaintiff must follow a two-step procedure to obtain a default judgment.  Fed. R. Civ. P. 55.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed

---

[2] Plaintiff incorrectly asserts that defendant filed the motion on August 3, 2015, which is the date the motion was granted.

to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, once a party's default has been entered, the plaintiff may move for entry of a default judgment. Fed. R. Civ. P. 55(b). "[A]n entry of default is a prerequisite to a default judgment." *Ramada Franchise Sys., Inc. v. Baroda Enterprises, LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004).

Plaintiff is not entitled to a default judgment against the University. Plaintiff did not obtain an entry of default prior to filing his motion for default judgment. Plaintiff therefore has not satisfied this prerequisite for obtaining a default judgment. *See Ramada Franchise Sys., Inc., LLC*, 220 F.R.D. at 305. Further, even assuming defendant committed procedural errors in filing the motion for extension of time, the Court granted defendant's motion, defendant filed its response within the time allotted, and defendant has continued to defend against plaintiff's claims. Thus, any procedural errors related to the motion for extension of time do not support a finding that defendant has defaulted.

For these reasons, plaintiff's motion for default judgment should be denied.

## III. Defendant's motion to dismiss the complaint

Defendant moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 8). Defendant construes plaintiff's complaint as asserting claims for relief under the following legal theories: (1) the University, acting under color of state law, deprived plaintiff of rights secured by federal statutes or the United States Constitution; (2) the University violated the Clery Act, 20 U.S.C. § 1092; (3) the University violated the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232; (4) the University violated the Higher Education Opportunity Act (HEA), 20 U.S.C. § 1001, *et seq*.; (5) the University is liable for promissory estoppel/breach of contract; (6) the University

7

created a hostile work environment; (7) the University is liable for defamation; (8) the University violated the Ohio Whistleblower Act, Ohio Rev. Code § 4113.52; and (9) the University is liable for negligent hiring and retention.  (Doc. 8-1 at 6).  Defendant contends that plaintiff has failed to state a claim for relief under any of these legal theories.  Plaintiff argues in response that he has alleged sufficient facts to state claims under various federal and state laws and constitutional provisions.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party.  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).  Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required.  *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Id*. (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."  *Id*. (quoting *Twombly,* 550 U.S. at 555, 570).  A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

It is well-settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers [.]"  *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, the Sixth Circuit has recognized that the Supreme Court's liberal

construction case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### 1. Plaintiff's claims for violations of his constitutional rights

Plaintiff brings his complaint under 28 U.S.C. § 1343(a)(3), among other statutes, alleging that the University, acting under color of state law, violated his constitutional rights when it terminated his employment. (Doc. 3 at 3). Section 1343(a)(3) gives the district court original jurisdiction of a civil action to redress the deprivation by a defendant, acting under color of State law, of "any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States[.]" Section 1343(a)(3) is the jurisdictional counterpart to 42 U.S.C. § 1983. *See Lynch v. Household Fin. Corp.*, 405 U.S. 538, 540 (1972). Section 1983 establishes a cause of action for deprivations of rights by a defendant acting under color of state law. 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978).

The complaint alleges that defendant violated plaintiff's rights under "applicable whistleblower laws" and other unspecified laws. (Doc. 3 at 14). Plaintiff further alleges in the complaint that the University discriminated against him, subjected him to a hostile work environment because of his protected activities, and retaliated against him. (*Id*. at 15).

Defendant contends that insofar as plaintiff brings the complaint under § 1343(a)(3), his claims must be dismissed because his allegations do not provide support for a finding that the University acted under color of state law. (Doc. 8-1 at 6-8). Defendant relies on case law which

holds that private entities do not function as state actors when making personnel decisions in which there is no state involvement.  (*Id*. at 7-8).  Plaintiff asserts that the University is a non-profit corporation but he claims that he was "a state actor under the color of law" while he was employed by the University.  (Doc. 13 at 9-11).  Plaintiff alleges that he was vested with police authority and powers under state law, and he asserts that the University has admitted through statements in its motion to dismiss that he was a state actor while employed by defendant.  (*Id*. at 10-11).  In reply, defendant acknowledges that state law authorizes a private university to create a police department (*see* Ohio Rev. Code § 1713.50); however, defendant states the law is clear that its personnel decisions as to the police officers in its department do not constitute state action for purposes of § 1983.  (Doc. 14 at 3-4).

There is no constitutional right to be free from harm inflicted by private actors. *Krukemyer v. Forcum*, 475 F. App'x 563, 566 (6th Cir. 2012).  Private actors can only be held liable under § 1983 if their "actions so approximate state action that they may be fairly attributed to the State."  *Riester v. Riverside Cmty. Sch.*, 257 F. Supp.2d 968, 971 (S.D. Ohio 2002) (quoting *Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir. 2000)).  Courts employ four tests to determine when private conduct may be attributed to the state: (1) the state compulsion test; (2) the symbiotic relationship/nexus test; (3) the "entwinement" test; and (4) the public function test.  *Id*. (citing *Lansing*, 202 F.3d at 828; *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.,* 531 U.S. 288 (2001)).

The first test, the state compulsion test, "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state."  *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir. 1992).  The second test, the symbiotic relationship/nexus test, asks whether "there is a

sufficiently close nexus between the state and the *challenged action* of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Zeigler v. Miskiewicz*, No. 2:07-cv-0272, 2008 WL 650335, at *8-9 (S.D. Ohio Mar. 5, 2008) (citing *Wolotsky,* 960 F.2d at 1335) (emphasis added)).  The third test, the "entwinement test," is satisfied if the private entity "is entwined with governmental policies" or the "government is entwined in [the private entity's] management or control." *Campbell v. PMI Food Equipment Group, Inc*., 509 F.3d 776, 784 (6th Cir. 2007) (quoting *Brentwood Acad.*, 531 U.S. at 296).  The fourth test, the public function test, asks whether the private entity "exercises powers which are traditionally exclusively reserved to the state." *New Day Farms, LLC v. Bd. of Trustees of York Twp., Ohio*, No. 2:08-cv-01107, 2009 WL 4016480, at *5 (S.D. Ohio Nov. 17, 2009) (quoting *Riester,* 257 F. Supp.2d at 971) (internal citations omitted)).  The "threshold is high for a private actor to meet the public function test and the Sixth Circuit interprets the public function test narrowly." *Id*. (quoting *Bowersock v. City of Lima,* No. 3:07-cv-730, 2008 WL 1767083 (N.D. Ohio Apr. 16, 2008) (citing *Chapman v. Higbee Co.,* 319 F.3d 825, 833 (6th Cir. 2003)).  The mere fact that a "private entity performs a function which serves the public does not make its acts state action." *Bell*, 122 F. App'x 219, 223 (6th Cir. 2005) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)).  Rather, the determinative factor in whether a private entity performs a public function for purposes of § 1983 liability is whether the function "has been traditionally the *exclusive* prerogative of the State." *Bell*, 122 F. App'x at 222 (quoting *Rendell-Baker*, 457 U.S. at 842 (emphasis in original)).

The Sixth Circuit has held in a variety of contexts that personnel decisions made by a private entity employer alleged to be acting under color of state law did not constitute a state function where the state did not regulate personnel decisions and was not involved in them.  *See*

*Bell*, 122 F. App'x at 222-23 (internal personnel decisions of private company operating a corrections facility under a state contract did not qualify as "state action" under the public function test) (citing *Rendell-Baker*, 457 U.S. at 842) (while a high school for maladjusted teens under contract with the state of Massachusetts was heavily regulated, the State did not regulate personnel actions within the school).  The Sixth Circuit stated in *Bell* that "mere employment with a government contractor does not render personnel decisions state action."  *Id*. at 223 (citing *Wolotsky,* 960 F.2d at 1333, 1335) ("where Ohio had no input on personnel actions within a privately run facility that provided mental health, drug, and alcohol rehabilitative services to Summit County, despite extensive funding, regulation, and oversight by the State, discharge of employees was not state action"); *Crowder v. Conlan*, 740 F.2d 447, 451 (6th Cir. 1984) ("personnel disciplinary action by privately run hospital with extensive Kentucky and county contacts held not state action, since State did not regulate personnel decisions of the hospital")).  The Sixth Circuit in *Bell* further acknowledged that "an entity may be a state actor for some purposes but not for others" and emphasized that the absence of state action "is especially apparent in internal employment matters, where even government employers are given considerable latitude."  *Id*. (citing *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)).  The reasoning in *Bell* has been applied to find that the decision of a proprietary police department to terminate a police officer with the department was not state action, even assuming the police department could "be deemed to be performing a public function traditionally reserved to the state by performing law enforcement services for the hospital[.]"  *Stephens v. Grandview Med. Ctr. Police Dep't*, No. 3:12-cv-00082, 2012 WL 1884129, at *4 (S.D. Ohio May 22, 2012) (Report and Recommendation), *adopted*, 2012 WL 2115390 (S.D. Ohio June 11, 2012) (citing *Bell*, 122 F. App'x at 223).

Consistent with the governing case law, plaintiff has failed to state a claim for relief against defendant for violation of his constitutional rights under § 1983. The factual allegations of the complaint do not support a finding that defendant was acting under color of state law when it made the decision to terminate plaintiff's employment. Plaintiff's allegations do not suggest that the State coerced or significantly encouraged the University in any sense. *Wolotsky*, 960 F.2d at 1335. Plaintiff has not alleged facts showing there was a sufficiently close nexus between the State and the University's decision to terminate him such that his termination can be fairly treated as the action of the State. *Id*. Nor has plaintiff alleged facts indicating that the State is entwined in the University's management or control. *Campbell*, 509 F.3d at 784. Moreover, while the University's police department could "be deemed to be performing a public function traditionally reserved to the state by performing law enforcement services for the [school]," there is no indication in the complaint that the State was involved in the University's personnel decisions. *See Stephens,* 2012 WL 1884129, at *4. Because the allegations of the complaint, liberally construed, do not provide support for a finding that the University acted under color of state law when it terminated plaintiff's employment, plaintiff's claim brought under 42 U.S.C. § 1983 should be dismissed.

**2. Plaintiff's claims for violations of federal education statutes**

Plaintiff indicates in the complaint that he brings claims under the Clery Act, 20 U.S.C. § 1092; the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232; and the Higher Education Opportunity Act (HEA), 20 U.S.C. § 1001, *et seq*. (Doc. 3 at 3). Liberally construing the allegations of the complaint, plaintiff claims that he was retaliated against and ultimately terminated for reporting violations of students' FERPA rights and a violation of the Clery Act by Carney and Thieman to the University's Human Resources Department. (*Id*. at 4-9,

11). Plaintiff alleges that violations of FERPA occurred when Thiemann disseminated protected student health information to student dispatchers. (*Id*. at 5). Plaintiff alleges that the University violated the Clery Act by failing to report the stink bomb incident, which was improperly classified as criminal trespass rather than burglary, in accordance with the Act's reporting requirements. (*Id*. at 6-7).

Defendant alleges that plaintiff's claims under the Clery Act, FERPA, and HEA must be dismissed because those statutes do not provide a private right of action. (Doc. 8-1 at 8-11). In addition, defendant asserts that plaintiff has not provided any factual support for a claim under the HEA. Defendant further alleges that even if there were a private right of action under the Clery Act, plaintiff has not stated a claim for relief under the Act because the acts of trespassing and setting off a stink bomb do not constitute the crime of burglary under the applicable federal definition.

In response, plaintiff indicates that he is not raising a claim under the HEA per se but he is asserting a claim under the specific provisions of the Clery Act, 20 U.S.C. § 1092(f)(17), a subsection of the HEA. (Doc. 13 at 11). Plaintiff alleges he has standing to pursue a claim under § 1092(f)(17), which he indicates provides protection for an employee. (*Id*. at 11-12). In support of his position, plaintiff cites a district court case from the Sixth Circuit where an individual sued a university under the Act (though unsuccessfully). (*Id*., citing *Moore v. Murray State Univ*., No. 5:12-cv-00178, 2013 WL 960320, at *3 (W.D. Ky. Mar. 12, 2013)). Plaintiff does not dispute there is no private right of action under FERPA, but he suggests he can pursue a claim for wrongful discharge in violation of Ohio public policy premised on the statute.

In reply, defendant asserts that no court has ever held that a private right of actions exists under § 1092(f)(17). (Doc. 14 at 5, citing cases). Defendant further notes that plaintiff does not

14

dispute there is no private right of action under FERPA, and defendant alleges plaintiff cannot raise an Ohio public policy claim for the first time in his brief in opposition to defendant's motion to dismiss.  (*Id*. at 5-6).  Finally, defendant states that even if plaintiff had pled a public policy claim premised on a FERPA violation, his claim would fail as a matter a law because plaintiff cannot state a claim for relief based on the underlying statute.  (*Id*. at 6-7).

### a. *Plaintiff has failed to state a claim for relief under the Clery Act.*

Plaintiff has failed to state a claim for relief under the Clery Act.  The Clery Act mandates the annual publication of security policies and crime statistics for institutions of higher education participating in certain federal programs.  20 U.S.C. § 1092(f).[3]  The statute explicitly states that there is no private right of action under 20 U.S.C. § 1092(f).  *See* 20 U.S.C. § 1092(f)(14)(A) ("Nothing in this subsection may be construed to--(i) create a cause of action against any institution of higher education or any employee of such an institution for any civil liability").  Plaintiff nonetheless argues that he has a private right of action under the Clery Act because he brings his claim under § 1092(f)(17), which states:

> No officer, employee, or agent of an institution participating in any program under this subchapter and part C of subchapter I of chapter 34 of Title 42 shall retaliate, intimidate, threaten, coerce, or otherwise discriminate against any individual for exercising their rights or responsibilities under any provision of this subsection.

---

[3] The statute provides for the imposition of a civil penalty for violation of its reporting requirements:

> Upon a determination pursuant to section 1094(c)(3)(B) of this title that an institution of higher education has substantially misrepresented the number, location, or nature of the crimes required to be reported under this subsection, *the Secretary shall impose a civil penalty* upon the institution in the same amount and pursuant to the same procedures as a civil penalty is imposed under section 1094(c)(3)(B) of this title.

20 U.S.C. 1092(f)(13) (emphasis added).

20 U.S.C. § 1092(f)(17).  Plaintiff has not cited, and the Court is not aware of, any authority

finding a private right of action under any provision of the Clery Act, including § 1092(f)(17).

The only case cited by plaintiff in support of his position held that there is no private right of

action under the statute.  *Moore*, 2013 WL 960320, at *3 ("Because no private right of action

exists, Moore's cause of action under the Clery Act fails as a matter of law.").  Other federal

district courts have also determined that there is no private right of action under the Clery Act.

*Doe v. United States Dep't of Health & Human Servs.*, 85 F. Supp.3d 1, 10 (D.D.C. 2015) ("The

Clery Act does prohibit private suits based on failure to comply with the Clery Act") (citing 20

U.S.C. § 1092(f)(14)(A)(i)); *Dziedzic v. State Univ. of New York at Oswego*, No. 5:10-cv-1018,

2014 WL 7331926, at *2 (N.D. N.Y. Dec. 19, 2014) (the plaintiff could not bring a claim against

the defendant state university under the Clery Act because "the Clery Act specifically states that

its provisions do not give rise to private causes of action against educational institutions") (citing

20 U.S.C. §§ 1092(f)(14)(A)(i), 1092(i)(5)(C), 1092(j)(2)(B)); *King v. San Francisco Cmty. Coll.*

*Dist.*, No. C10-01979, 2010 WL 3930982, at *5 (N.D. Cal. Oct. 6, 2010) (the Clery Act itself

does not provide any private right of action).

   In light of the explicit provision in 20 U.S.C. § 1092(f) stating there is no private cause of

action under that subsection, and in the absence of any authority holding there is a private right

of action for individuals under a provision of that subsection notwithstanding the express

language of § 1092(f)(14), the Court finds plaintiff cannot pursue a claim for violation of his

rights under the Clery Act.  Plaintiff's claim under the Clery Act should be dismissed for failure

to state a claim upon which relief can be granted.

### b. *Plaintiff has failed to state a claim for relief under FERPA.*

Plaintiff does not dispute that he cannot state a claim under FERPA.  Instead, plaintiff seeks to bring a claim for wrongful discharge in violation of Ohio public policy premised on the University's alleged violations of FERPA.  Plaintiff generally alleges that under Ohio law, an employee can bring a claim against an employer for damages when the employee is discharged "for a reason which is prohibited by statute (regardless of whether or not the statute provides a right of action.)"  (Doc. 13 at 12).  Defendant argues that plaintiff's claim for wrongful discharge in violation of Ohio public policy must be dismissed because he did not raise the claim in his complaint but presents it for the first time in response to the motion to dismiss.  (Doc. 14 at 5-6, citing *Ryan v. McIntosh*, No. 2:13-cv-00880, 2014 WL 580137, at *4 (S.D. Ohio Feb. 12, 2014)).  Defendant further contends that even if plaintiff were permitted to pursue this claim, it fails as a matter of law because (1) plaintiff cannot bring a claim for relief under the underlying statute (FERPA), (2) plaintiff has not alleged facts to support a finding that a FERPA violation occurred, and (3) a FERPA violation cannot support a common law wrongful discharge claim.  (*Id*. at 6-7).

Plaintiff's FERPA claim should be dismissed.  It is clear that FERPA does not create a private right of action.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287-90 (2002).  Thus, plaintiff cannot state a claim for relief under the statute.

Nor can plaintiff pursue a wrongful discharge claim based on a FERPA violation under Ohio law, which recognizes a "public policy" exception to the employment-at-will doctrine. *Hale v. Mercy Health Partners*, 617 F. App'x 395, 402 (6th Cir. 2015) (citing *Pytlinski v. Brocar Prods., Inc.*, 94 Ohio St.3d 77, 78 (2002)).  Plaintiff did not raise a public policy claim in his complaint, and leave to amend to permit him to add the claim is not warranted because it is clear

that plaintiff cannot satisfy the elements of a common law wrongful discharge.  *Cf. Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) ("generally, '[i]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.") (quoting 6 Charles Alan Wright et al., *Federal Practice and Procedure,* § 1483 (3d ed. 2010)).

Under Ohio law, "[a]n employer may not . . . discharge an employee where the discharge violates 'clear public policy' established by the Constitution and statutes of the United States, the Constitution and statutes of Ohio, administrative rules and regulations, and/or the common law." *Arsham-Brenner v. Grande Point Health Care Cmty.*, No. 74835, 2000 WL 968790, at *2 (Ohio App. 1 Dist. July 13, 2000) (citations omitted).  To establish a claim for wrongful termination in violation of Ohio public policy, a plaintiff must show: (1) there was a clear public policy that was manifested in a state or federal constitution, statute, or administrative regulation or in the common law; (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy; (3) the plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer lacked an overriding legitimate business justification for the dismissal.  *Hale*, 617 F. App'x at 402 (citing *Collins v. Rizkana*, 652 N.E.2d 653, 657-58 (Ohio 1995)).  The first two elements are questions of law for the Court to decide.  *Id*. (citing *Collins*, 652 N.E.2d 653).  To satisfy the clarity element, the plaintiff must point to a specific provision of federal or state law, administrative regulation, or common law. *Id*. at 402 (citing *Dohme v. Eurand Am., Inc.,* 956 N.E.2d 825 (Ohio 2011)).  The claimed public policy embodied in that specific provision must "parallel" the Ohio whistleblower statute, Ohio Rev. Code § 4113.52.  *Id*.  To parallel the whistleblower statute, the policy must: (1) "impose 'an affirmative duty on the employee to report a violation'"; (2) "specifically prohibit[] employers

from retaliating against employees who had filed complaints"; or (3) "protect[] the public's health and safety." *Id*. at 403 (quoting *Dean v. Consol. Equities Realty # 3, L.L.C.,* 182 Ohio App.3d 725, 729, 914 N.E.2d 1109 (2009)).

Applying this three-part test in *Hale*, the Sixth Circuit determined that an Ohio administrative regulation requiring that institutional pharmacies "maintain proper transport and record-keeping processes to ensure [] narcotics are properly accounted for by the pharmacies" did not parallel the whistleblower statute. *Id*. The Court found that: (1) the regulation did not require employees to report violations; (2) the regulation did not prohibit employer retaliation; and (3) the regulation did not specifically protect the institutional pharmacy's patients because the regulation "merely impose[d] 'baseline technical requirements that [institutional pharmacies had] to satisfy to operate.'" *Id.*

Consistent with the reasoning in *Hale*, plaintiff's public policy claim against the University likewise does not satisfy the clarity element.  Plaintiff alleges that he was retaliated against and terminated for presenting a number of complaints to the University's Human Resources Department, including complaints that Thieman disbursed protected student health information to student dispatchers in violation of FERPA, 20 U.S.C. § 1232.  (Doc. 3 at 5). FERPA does not embody a clear public policy that parallels the Ohio whistleblower statute. FERPA neither imposes an affirmative duty on plaintiff or any other employee to report a violation nor specifically prohibits employers from retaliating against employees who have complained of violations.  Nor is FERPA intended to protect the public's health or safety. Rather, FERPA's purpose is "to assure parents of students . . . access to their educational records and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent."  *Frazier v. Fairhaven Sch. Comm*., 276 F.3d 52, 67-68 (1st Cir. 2002)

19

(quoting 120 Cong. Rec. 39,862 (1974)).  Consistent with FERPA's purpose, the only available

remedy under FERPA is the denial of funding to an educational institution "which has a policy

or practice of permitting the release of education records (or personally identifiable information

contained therein. . .) of students without the written consent of their parents to any individual,

agency, or organization. . . ."  20 U.S.C. § 1232g.  Because FERPA is designed to protect

individual privacy interests and does not embody a public policy that parallels the Ohio

whistleblower statute, plaintiff cannot pursue a common law wrongful discharge claim against

the University premised on FERPA.  *Hale*, 617 F. App'x at 403.

### 3.  Plaintiff's breach of implied contract/promissory estoppel claim

Plaintiff alleges in the complaint that although he "had initially been hired as an

Employee at Will," Carney and Frizzell advised him and all other officers that as long as they

"work 16 hours a month volunteer and graduation, the College will hold our Peace Officer

Commissions."  (Doc. 3 at 10).  Plaintiff alleges that he relied on these statements to his

detriment by volunteering 16 hours per month and working graduation details as agreed upon,

and by purchasing approximately $4,000 worth of police equipment.[4]  (*Id*. at 10-11).

---

[4] The Court notes that plaintiff has made inconsistent allegations regarding the timing of the various promises
defendant made to him.  Plaintiff alleges in the complaint that "although [he] had *initially been hired* as an
Employee at Will," Carney and Frizzell "both on number occasion (sic)" advised plaintiff and others that the
University would "hold [their] Peace Officer Commissions" as long as they volunteered 16 hours a month and at
graduation.  (Doc. 3 at 10).  Plaintiff alleges that based on "this statement" he purchased approximately $4,000
worth of police equipment.  (*Id*. at 11).  He also alleges that he worked the volunteer hours in reliance on "these
statements."  (*Id*.).  In his response to the motion to dismiss, plaintiff alleges that "he was advised *to obtain
employment*, he would have to purchase literally almost (sic) one can think of that a Peace Officer would have to use
in the line of duty."  (Doc. 13 at 15) (emphasis added).  Plaintiff asserts that he would not have "purchased said
equipment *nor taken said position with the University if there was not an agreement such as that of continued
employment*. . . ."  (*Id*.) (emphasis added).  Plaintiff alleges that he reasonably and foreseeably relied on defendant's
statements of job security "*when he agreed to take on said position*" and "purchase[d] expensive police
equipment[.]"  (*Id*.) (emphasis added).

Defendant contends plaintiff's breach of contract/promissory estoppel claim must be dismissed because plaintiff has not alleged a clear promise of continued employment upon which he justifiably relied. (Doc. 8-1 at 12-13). Defendant notes that plaintiff alleges in the complaint that he was an at-will employee. (*See* Doc. 3 at 10). Defendant asserts that plaintiff has not alleged that the University made a clear and unambiguous promise of continued employment for a specific period as required to alter plaintiff's at-will employment status under Ohio law, and neither does he allege that defendant promised he would remain employed regardless of any misconduct. Rather, defendant contends that plaintiff alleges only that he was promised his peace officer commission would remain active so long as certain conditions were fulfilled, which is a matter over which the University does not have authority. (Doc. 8-1 at 12, citing Ohio Admin. Code § 109:2). Defendant contends that because plaintiff cannot establish the elements of a promissory estoppel claim, the claim must be dismissed as a matter of law. (*Id*. at 13).

In response, plaintiff alleges that defendant made a clear and unambiguous promise of employment for a specific time, defined as "as long as officers work their 16 hours a month completely unpaid and volunteer along with working June Graduation Ceremony, their Peace Officer Commissions would be held." (Doc. 13 at 13-14). Plaintiff argues there is no distinction between remaining employed and maintaining an active peace officer commission because as soon as an individual is terminated, his commission is invalid. (*Id*. at 14). Plaintiff alleges he reasonably believed that if he were to be discharged, it would only be for committing a crime which would legally prohibit an individual from being employed as a peace officer, such as a felony, a drug crime, or a violent crime. (*Id*.). Plaintiff contends that if defendant continues to assert he is an employee-at-will, he would like to assert a wrongful discharge claim in violation of Ohio public policy. (*Id*. at 16).

21

Under the employment at-will doctrine, "the employee is subject to discharge by an employer at any time, even without cause." *Wright v. Honda of Am. Mfg., Inc.,* 653 N.E.2d 381, 384 (Ohio 1995). There are two exceptions to the employment-at-will doctrine: "(1) the existence of implied or express contractual provisions which alter the terms of discharge; and (2) the existence of promissory estoppel where representations or promises have been made to an employee." *Id.* (citing *Mers v. Dispatch Printing Co*., 483 N.E.2d 150, 154 (Ohio 1985)). In this case, plaintiff does not allege the existence of implied or express contractual provisions which altered the terms of his employment-at-will with defendant. Thus, only the promissory estoppel exception to the employment-at-will doctrine is at issue here.

The doctrine of promissory estoppel provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Talley v. Teamsters, Chauffeurs, Warehousemen, and Helpers, Local 377,* 357 N.E.2d 44, 47 (Ohio 1976). To prove a claim for promissory estoppel, a plaintiff must show: (1) a clear and unambiguous promise; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. *Cohen & Co. v. Messina,* 492 N.E.2d 867, 872 (Ohio App. 8th Dist. 1985).

To establish the first element, plaintiff must allege a promise by the University that can be interpreted as limiting its ability to terminate him. *Melott v. ACC Operations, Inc.*, No. 2:05-cv-063, 2006 WL 1892656, at *6 (S.D. Ohio July 10, 2006) (citing *Srail v. RJF Internatl. Corp.*, 711 N.E.2d 264, 278 (Ohio App. 8th Dist. 1998). Plaintiff must show that a "specific promise of job security" was made to him. *Id.* (quoting *Skalka v. Fernald Envtl. Restoration Mgmt. Corp*.,

178 F.3d 414, 424 (6th Cir. 1999)).  A clear and unambiguous promise of job security

"specifically indicates the length of employment."  *Id*. (citing *Condon v. Body, Vickers &*

*Daniels*, 649 N.E.2d 1259, 1264 (Ohio App. 8th Dist. 1994)).  *See also L.F.P. IP, LLC v. Hustler*

*Cincinnati, Inc.*, No. 1:09-cv-913, 2013 WL 27494, at *3 (S.D. Ohio Jan. 2, 2013), *aff'd*, 533 F.

App'x 615 (6th Cir. 2013) ("vague and ambiguous references to job security, 'long term'

employment, and other such concepts are insufficient as a matter of Ohio law to support [a]

cause of action" for promissory estoppel) (citing *Snyder v. AG Trucking, Inc.,* 57 F.3d 484, 489

(6th Cir. 1995) (statement that plaintiff could "expect" to be there "until retirement" was not

sufficient to state claim for promissory estoppel); *Andres v. Drug Emporium, Inc.,* No. 00AP-

1214, 2001 WL 987804, at *4-5 (Ohio App. 10th Dist. Aug. 30, 2001) (statement that the

plaintiff's employment would be "long term" was insufficient to support promissory estoppel

claim)).

    Plaintiff has failed to state a claim for promissory estoppel.  The promise on which

plaintiff relied is a statement Carney and Frizzell repeated on a number of occasions advising

plaintiff and other campus police officers that "as long as [they] work[ed] 16 hours a month

volunteer and graduation, the College [would] hold [their] Peace Officer Commissions."  (Doc. 3

at 10).  A promise that plaintiff would remain employed so long as he worked the required

volunteer hours and graduation detail is not sufficiently definite to support a promissory estoppel

claim.  *See Melott*, 2006 WL 1892656, at *6.  The statement does not constitute a promise of

employment for a specified period of time.  *Id*.  Nor does the statement limit the University's

ability to terminate plaintiff's employment to any extent.  Even assuming defendant promised

plaintiff his commission would be continued so long as he satisfied the requirement that he work

volunteer hours and a graduation detail, plaintiff does not allege that defendant made any

promises related to the possibility of discharge for reasons unrelated to the failure to fulfill the volunteer duty requirement.

In addition, liberally construed in his favor, plaintiff's allegations do not support a finding that plaintiff reasonably and foreseeably relied on the promise that his peace officer commission would be continued so long as he performed mandatory volunteer work hours. It was not reasonable for plaintiff to deduce from this promise that so long as he satisfied his volunteer hours requirement, he was guaranteed immunity from discharge for any conceivable reason. Such a proposition defies common sense. *See Melott*, 2006 WL 1892656, at *7 (the plaintiff's subjective understanding that employer's general offer to assist with her transfer meant she would not be discharged for unexcused absences was not based on a concrete promise and was unreasonable). Plaintiff appears to recognize the far-reaching implications of an open-ended promise of this nature by alleging in his opposing memorandum that he understood he could be terminated only for certain criminal offenses that would legally prohibit him from being employed as a police office. (Doc. 13 at 14). However, plaintiff does not point to any representations by defendant that support his subjective understanding and show that defendant made "a clear and unambiguous promise" that the only possible bases for termination were the commission of certain criminal offenses and the failure to perform voluntary service hours.

Accordingly, defendant's representation that plaintiff's commission would be continued if he met certain conditions of employment cannot support plaintiff's promissory estoppel claim. The promise is not "clear and unequivocal," and it was not reasonable for plaintiff to rely on the statement as a promise of job security and alteration of the employment-at-will relationship. Thus, plaintiff's promissory estoppel claim should be dismissed.

### 4.  **Plaintiff's hostile work environment claim**

Plaintiff brings a hostile work environment claim, alleging that Carney harassed him in a number of ways and created a hostile work environment.  Plaintiff alleges this occurred after he notified Litton in the Human Resources Department that Thieman had allegedly violated the FERPA and plaintiff had lodged numerous complaints about Carney.  (Doc. 3 at 4, 9). Defendant contends that plaintiff's claim must be dismissed because plaintiff did not exhaust his administrative remedies as required to pursue a claim under 42 U.S.C. § 2000e, *et seq*. (Title VII).  (Doc. 8-1 at 13).  Defendant further contends that plaintiff cannot pursue a hostile environment claim under either Title VII or the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02(A) (OCRA), because he does not allege that he is a member of a protected class or that he suffered an adverse action because of his membership in a protected class.  (*Id*. at 13-14). Defendant further alleges that plaintiff's generalized complaints of unfair treatment which do not specifically address discrimination or do not allege retaliation based on protected activity do not state a claim for relief.  (*Id*.).

In response, plaintiff alleges that he is not required to exhaust his administrative remedies in order to pursue a claim for violations of the OCRA.  (Doc. 13 at 17).  Plaintiff alleges that his supervisor Carney retaliated against him on more than one occasion for engaging in "protected activity" while plaintiff was employed as a "State of Ohio Commission Peace Officer" and that plaintiff was terminated for "enforcing the law."  (*Id*.).  Plaintiff suggests that the University knew or should have known about the harassment and failed to take prompt corrective action. (*Id*. at 18).  Plaintiff alleges that Carney has on more than one occasion made racial comments and openly criticized plaintiff for sending his children to daycare and signing them up to learn the Spanish language.  (*Id*. at 17).  In reply, defendant contends that "law enforcement officer" is

25

not a protected status under either the federal or state anti-discrimination laws and plaintiff's new allegations of Carney's comments about daycare and learning Spanish are insufficient to state a claim for discrimination based on a protected status.  (Doc. 14 at 9-10).

Plaintiff appears to allege two claims under Title VII and the OCRA: (1) retaliation for engaging in protected activity, and (2) harassment which created a hostile work environment and culminated in his discharge.  (Doc. 13 at 17-18).  Plaintiff has failed to state a claim for relief under either of these theories.

Plaintiff cannot pursue his retaliation or discrimination claims under Title VII because he has not exhausted his administrative remedies as to these claims.  Exhaustion of administrative remedies is a precondition to filing a Title VII lawsuit.  *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008) (citing *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002); *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)).  As a general rule, a plaintiff must first file a timely charge with the Equal Employment Opportunity Commission (EEOC) before pursuing an employment discrimination action under Title VII.  *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 361 (6th Cir. 2010).  The EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  *Id.  See also* 29 C.F.R. § 1601.12(b); *Williams v. CSX Transp. Co.,* 643 F.3d 502, 508 (6th Cir. 2011).  As such, Title VII plaintiffs cannot bring claims in a lawsuit that were not included in an EEOC charge.  *Younis,* 610 F.3d at 361 (citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47 (1974)).

Plaintiff does not allege in the complaint that he filed a timely administrative charge with the EEOC.  Nor does he dispute defendant's representation in the motion to dismiss that he has not filed a charge arising out of his termination with the EEOC.  (Doc. 8-1 at 13).  Plaintiff states only that charges filed with either the EEOC or the Ohio Civil Rights Commission (OCRC) are

"usually deemed to be duly filed" and that exhaustion of remedies is not required in order to bring a claim under the OCRA. (Doc. 13 at 17). Because there is no allegation that plaintiff filed an administrative charge with either the EEOC or the OCRC prior to bringing this lawsuit, plaintiff's claims brought under Title VII should be dismissed for failure to exhaust his administrative remedies.

Further, plaintiff's retaliation claims brought under Title VII as well as the OCRA should be dismissed because plaintiff has not stated a plausible claim for retaliation. Title VII's anti-retaliation provision states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3. Ohio's anti-retaliation provision makes it unlawful:

> For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

Ohio Rev. Code § 4112.02(I).

Plaintiff's allegations do not show that he opposed any unlawful discriminatory practice as required to state a claim for retaliation under Title VII and the OCRA. Plaintiff alleges that he complained about Thieman disbursing protected student health information in alleged violation of FERPA. (Doc. 3 at 4-5, 9). Plaintiff alleges he also complained about Carney altering criminal offense reports, failing to properly handle felony drug offenses, disrespecting officers under his command, failing to distribute a PPM in alleged violation of the Clery Act, and performing poorly in his prior position with an Ohio police department. (*Id*. at 4-5, 9, 10). None

of these complaints involve unlawful discriminatory practices made unlawful under either Title VII or the OCRA. Because plaintiff has not alleged retaliation based on an unlawful employment practice under the applicable statutes, plaintiff's retaliation claims should be dismissed for failure to state a claim for relief.

Plaintiff's harassment claims should also be dismissed. As explained above, plaintiff has failed to exhaust his administrative remedies as to his Title VII harassment claim. Further, plaintiff has not stated a plausible harassment claim under either Title VII or the OCRA. Title VII makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Similarly, the OCRA makes it unlawful for an employer "because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). Plaintiff's allegations do not suggest that he was subjected to harassment or any adverse action because of a protected characteristic. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) ("In Title VII actions . . . it is important to distinguish between harassment and discriminatory harassment in order to 'ensure that Title VII does not become a general civility code.'")). Plaintiff alleges in his response to the motion to dismiss that Carney made "racial comments" to him about sending his children to daycare and signing them up to learn Spanish. (Doc. 13 at 17). However, neither the complaint nor the response to the motion to dismiss connect these alleged comments to plaintiff's race or

28

any other protected characteristic. As plaintiff has not alleged any connection between the

harassment alleged in the complaint and any protected characteristic, he has not stated a

plausible claim of a hostile work environment under either Title VII or the OCRA. His hostile

environment claims should be dismissed.

### 5. Plaintiff's defamation claim

Plaintiff brings a claim for defamation under Ohio law. (Doc 3 at 11). He alleges that

after he was terminated, Carney "sent out a memorandum to the college, that if [plaintiff was]

seen on the campus again," Carney was to be notified. (*Id.*). Plaintiff further alleges that Carney

and Thieman have "spoken to officers and students regarding [his] termination[.]" (*Id.*).

Defendant contends that plaintiff has failed to state a claim for defamation under Ohio

law because plaintiff does not allege that a false or defamatory statement was made about him;

that a statement was published to a third party outside of the University; or that he suffered

injury as a result of the statements he describes in the complaint. (Doc. 8-1 at 15). Plaintiff does

not expressly address this claim in his response to the motion to dismiss. Plaintiff alleges in

connection with his whistleblower claim that Carney distributed a public email advising the

college community to notify campus police immediately if they saw plaintiff on campus; a

reasonable person would interpret this email as negatively directed at plaintiff and as indicating

that he had been terminated as evidenced by several phone calls he received expressing genuine

concern upon distribution of the email; and the email was unnecessary and its purpose was to

harm his reputation. (Doc. 13 at 22).

Under Ohio law, "defamation occurs when a publication contains a false statement 'made

with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to

public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her

trade, business or profession.'"  *Gilreath v. Plumbers, Pipefitters, & Serv. Technicians Local 502*, No. 1:09-cv-628, 2010 WL 6423321, at *4 (S.D. Ohio Aug. 30, 2010) (Report and Recommendation), *adopted,* 2011 WL 1288125 (S.D. Ohio Mar. 31, 2011) (quoting *Jackson v. Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008) (quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 651 N.E.2d 1283, 1298 (Ohio 1995)).  To state a claim for relief for defamation, plaintiff must allege facts showing: "(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory *per se* or caused special harm to the plaintiff."  *Woods v. Summertime Sweet Treats, Inc.*, No. 08-MA-169, 2009 WL 3806179, at *4 (Ohio App. 7th Dist. Nov. 13, 2009) (quoting *Gosden v. Louis*, 687 N.E.2d 481, 488 (Ohio App. 9th Dist. 1996)).

Plaintiff has failed to state a claim for relief for defamation.  Plaintiff does not suggest that the memorandum asking individuals to alert Carney if plaintiff was seen on campus was false in any sense.  Nor has plaintiff identified the statements about his termination that Carney and Thieman made to officers and students.  Plaintiff's vague allegations that these individuals discussed his termination with others does not give defendant fair notice of the factual basis for his claim and does not permit the Court to draw the reasonable inference that Carney or Thieman made false statements about plaintiff and defamed him.  *Gilreath*, 2010 WL 6423321, at *5 (citing *Erickson,* 551 U.S. at 93).  Plaintiff's defamation claim should be dismissed for failure to state a claim for relief.

### 6.  Plaintiff's whistleblower claim

Plaintiff brings a claim against the University for violation of the "Whistleblower Act," "Whistleblower Laws" and "Internal Whistleblower Policy."  (Doc. 3 at 4, 11).  Plaintiff alleges

that he was retaliated against and terminated in violation of the "Whistleblower Act." (*Id.* at 4). Defendant alleges that plaintiff's claim, which is properly construed as a claim under the Ohio Whistleblower Act, must be dismissed because it was not timely filed within 180 days of the alleged adverse action. (Doc. 8-1 at 15, citing Ohio Rev. Code § 4113.52(D)).

In response, plaintiff acknowledges that the statutory 180-day limitations period set forth in § 4113.52(D) applies to his whistleblower claim. (Doc. 13 at 19). However, plaintiff alleges that the statute of limitations has not run on his claim because he has experienced ongoing retaliation in the form of a continuing ban from campus and spoliation of evidence as evidenced by defendant's response to his public records request. (Doc. 13 at 20-21). Plaintiff also suggests that only claims for reinstatement, back-pay and attorney fees are governed by the 180-day limitations period so that his claims for any other types of relief are not time-barred. (Doc. 13 at 21).

Ohio's whistleblower statute, Ohio Rev. Code § 4113.52, prohibits an employer from taking disciplinary or retaliatory action against an employee for reporting certain violations of the law. *Miller v. Rodman Pub. Library Bd. of Trustees*, No. 2008 CA 00120, 2009 WL 321293, at *1 (Ohio App. 5th Dist. Feb. 9, 2009). An aggrieved employee may bring a civil action for appropriate injunctive relief and/or for any of the remedies set forth in § 4113.52(E) within 180 days "after the date the disciplinary or retaliatory action was taken[.]" Ohio Rev. Code § 4113.52(D). The Court may award a prevailing plaintiff any of the following remedies: reinstatement, back pay and benefits, and attorney fees and costs. Ohio Rev. Code § 4113.52(E).

An employee must strictly comply with the dictates of Ohio Rev. Code § 4113.52 to obtain protection as a whistleblower. *Contreras v. Ferror Corp.*, 652 N.E.2d 940, 944 (Ohio 1995). The statute imposes the following requirements: (1) the employee must provide oral

31

notification of the employer's violation to the employee's supervisor or other responsible officer of the employer, (2) the employee must file a written report with the supervisor or other responsible officer, and (3) the employer must have failed to correct the violation or to make a reasonable and good faith effort to correct the violation. Ohio Rev. Code § 4113.52(A). To satisfy § 4113.52(A), an employee must reasonably believe that his employer's conduct constituted a criminal offense. *Blackburn v. Am. Dental Ctrs.*, No. 10AP-958, 2011 WL 5825391, at *5 (Ohio App. 10th Dist. Nov. 17, 2011).

Plaintiff's whistleblower claim should be dismissed on the ground it is time-barred. Plaintiff alleges that he was discharged from his employment on June 29, 2014. (Doc. 3 at 4). Plaintiff did not institute this lawsuit until one year later on June 29, 2015. (Doc. 1). This was well outside the 180-day limitations period provided under the whistleblower statute, § 4113.52(D). Although plaintiff seeks to invoke a continuing violation theory by alleging that the University continues to retaliate against him by barring him from campus and by engaging in the spoliation of evidence, he cites no legal authority supporting the application of the theory in the whistleblower context. Nor is the Court aware of any authority that would allow the limitations period to run indefinitely beyond the date plaintiff was allegedly discharged for his whistleblower activities and was no longer employed by defendant.

Plaintiff's whistleblower claim should be dismissed on the additional ground that plaintiff has not sufficiently pled the requirements of a claim under Ohio Rev. Code § 4113.52. Plaintiff alleges that he reported concerns regarding Carney's conduct to the University's Human Resources Department. (Doc. 3 at 4-5, 10, 12). Even assuming plaintiff satisfied the reporting requirements of the statute, there is no indication in the complaint that plaintiff reasonably

believed that any of the conduct he complained about constituted a criminal offense.  *Blackburn*, 2011 WL 5825391, at *5.

For these reasons, plaintiff's whistleblower claim should be dismissed for failure to state a claim for relief.

### 7.  Plaintiff's negligent hiring and retention claims

Plaintiff claims that the University was negligent in hiring and retaining Carney as chief of the University police department.  (Doc. 3 at 12-13).  Plaintiff alleges that defendant was negligent in hiring Carney because there was clear evidence that was publicly available purportedly showing that Carney had previously been found incompetent for a police chief position in Ohio and was likely unfit to hold any leadership position in law enforcement.  (*Id*. at 12).  Plaintiff alleges he advised Litton of his findings of a continuing pattern of misconduct by Carney in his prior job and at the University, and plaintiff was terminated by Carney with Thieman and Litton's approval one week later.  (*Id*. at 12-13).  Plaintiff alleges that defendant negligently retained Carney after the University became aware of his conduct.  (*Id*. at 13).

Defendant contends that plaintiff's negligent hiring and retention claims against the University must be dismissed because there is no factual basis for concluding that Carney is individually liable for a tort.  (Doc. 8-1 at 16).  Defendant asserts that plaintiff has alleged nothing more than his disagreement with the University's decision to hire and retain Carney as its police chief.  (*Id*. at 16-17).

Negligent hiring and retention claims under Ohio law require proof of five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the

33

employee was the proximate cause of the plaintiff's injuries.  *Hout v. City of Mansfield*, 550 F. Supp.2d 701, 745 (N.D. Ohio 2008) (citing *Linder v. Am. Nat'l Ins. Co.,* 798 N.E.2d 1190, 1197 (Ohio App. 1st Dist. 2003)).  A plaintiff must be able to establish a tort claim against the individual employee in order to maintain an action for negligent supervision or retention against the employer.  *Minnich v. Cooper Farms, Inc.*, 39 F. App'x 289, 296 (6th Cir. 2002) (citing *Myers v. Goodwill Indus. of Akron, Inc.*, 721 N.E.2d 130, 134 (Ohio App. 9th Dist. 1998); *Campbell v. Colley*, 680 N.E.2d 201, 206 (Ohio App. 4th Dist. 1996)).

Plaintiff has failed to state a claim for negligent retention and hiring.  First, with respect to his negligent hiring claim, plaintiff does not allege that the University had actual or constructive knowledge of Carney's purported incompetence.  Plaintiff alleges only that the University would have uncovered such information had it conducted an open records search or undertaken a "good faith" investigation prior to hiring Carney.  (Doc. 3 at 12).  Plaintiff's allegations fail to satisfy the actual or constructive knowledge element of his negligent hiring claim.

Plaintiff's allegations also fail to satisfy the necessary elements of a negligent retention claim.  Plaintiff alleges that the University retained Carney even after plaintiff had made Litton aware of his poor performance record and a pattern of conduct which was allegedly causing a large number of officers to leave the department.  (*Id*. at 12-13).  Even assuming plaintiff could establish that the University was aware one week before his termination of Carney's alleged incompetence, the allegations of the complaint are insufficient to establish an underlying tort claim against Carney.  In his response to the motion to dismiss, plaintiff alleges that Carney committed a number of torts that plaintiff did not raise in the complaint.  (Doc. 13 at 22-25). Plaintiff contends that Carney "threat[ened] stalking," required others to stalk under duress

34

and/or report on plaintiff, engaged in hostile interrogation and harassment, violated plaintiff's privacy rights by having his officers observe plaintiff and report on him long after his employment with the University had concluded, and violated plaintiff's due process rights by failing to maintain any records of his firearms qualifications, disciplinary records, and performance evaluations as required by University policy.  (*Id*.).  In addition, plaintiff appears to assert a claim for intentional infliction of emotional distress.  (*Id*. at 24-25).  Insofar as plaintiff presents these new allegations in his response to the motion to dismiss, leave to amend to permit plaintiff to add the new allegations is not warranted.  Plaintiff's vague and conclusory assertions that Carney committed numerous torts lack factual support and cannot establish the necessary elements of an underlying common law tort.  *Cf. Brown*, 415 F. App'x at 614 (court should dismiss claim with leave to amend if it is at all possible that party can correct defect in the pleading or state a claim for relief).  Plaintiff's negligent retention claim should be dismissed.

## IV.  Conclusion

Plaintiff has failed to state a claim for relief under federal or state law.  Further, plaintiff should not be granted leave to amend the complaint to add the new factual allegations he has presented in his response to the motion to dismiss.  Those factual allegations, accepted as true, do not cure the defects in the complaint or state a claim for relief.  The complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IT IS THEREFORE RECOMMENDED THAT:

1.  Defendant's motion to dismiss (Doc. 8) be **GRANTED.**

2.  Plaintiff's motion for default judgment (Doc. 10) be **DENIED.**

3.  The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and

therefore deny plaintiff leave to appeal *in forma pauperis*.  Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals.  *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.,* 105 F.3d 274, 277 (6th Cir. 1997).

Date: <u>March 11, 2016  </u>                         <u>s/ Karen L. Litkovitz      </u>
                                                 Karen L. Litkovitz
                                                 United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

STEPHEN T. SOUDERS,                              Case No. 1:15-cv-429
          Plaintiff,                                       Beckwith, J.
                                                            Litkovitz, M.J.

          vs.


MOUNT ST. JOSEPH UNIVERSITY,
          Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).